Harry W. STURGES, III,
et al, Appellant,

v.

WAL–MART STORES, INC.,
et al, Appellee.

No. 09–96–315 CV.

Court of Appeals of Texas,
Beaumont.

Submitted Jan. 29, 1998.

Decided July 30, 1998.

Publication Ordered March 12, 2001.

Morris C. Gore, Dallas, Carl Parker, Parker & Park, LLP, Port Arthur, for appellant.

J. Preston Wrotenbery, Kevin D. Jewell, Magenheim, Bateman, Robinson, Wrotenbery & Helfand, P.L.L.C., Houston, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

BURGESS, Justice.

Harry W. Sturges, III, Dick Ford, Bruce Whitehead, and J.D. Martin, III, individually and on behalf of Gulf Coast Investment Group, brought suit against Wal–Mart for breach of contract and tortious interference with prospective business relations. A jury awarded them $1,000,000 in actual damages, and $500,000 in exemplary damages in a bifurcated trial. Sturges, et al, appeal the exemplary damage award and bring two points of error. Wal–Mart cross appeals bringing nine cross points.

This case involves a dispute concerning commercial property, referred to as "tract 2". In 1982, Wal–Mart owned tract 2, which was adjacent to tract 1, the property where the Wal–Mart Store in Nederland, Texas was located. In 1984, Whitehead as trustee, purchased tract 2 on behalf of Texas Southwest Gulf Coast Partnership. In connection with the purchase of tract 2, and as part of the consideration of the sale, Texas Southwest executed a document reflecting restrictions on the property, entitled Easements With Covenants and Restrictions Affecting Land (the 1984 ECR). The 1984 ECR confirmed an agreement to develop a commercial shopping center containing a supermarket on tract 2.

In conversations with Whitehead, Wal–Mart representatives enthusiastically supported the development of a supermarket on tract 2. Subsequent to the 1984 ECR, Texas Southwest withdrew from the partnership and any ownership interest in tract 2. In 1987 or 1988, Gulf Coast discovered that Wal–Mart had encroached on tract 2. During that time, Gulf Coast locat-

ed a potential purchaser for a portion of tract 2. In 1988, Gulf Coast and Wal–Mart entered into and executed a document modifying the 1984 ECR (the 1988 ECR). As a part of the consideration for the 1988 ECR, the encroachment was conveyed to Wal–Mart and certain modifications were made enabling Gulf Coast to sell a portion of the property to a fast food restaurant. The 1988 ECR specifically canceled the provisions of the 1984 ECR and by reference ratified and affirmed and made a part of the 1988 ECR, a 1982 ECR that had been executed by Wal–Mart.

The 1988 ECR incorporated the 1982 ECR which provided that consent to future amendments of the ECR would not be unreasonably withheld. Appellants contend the 1988 ECR evidenced an agreement between Gulf Coast and Wal–Mart to act reasonably regarding any future requested modifications to the 1988 ECR.

Prior to the execution of the 1988 ECR, Whitehead expressed a concern to Wal–Mart that conveyance of the encroachment would interfere with the development of tract 2. Wal–Mart assured Whitehead that they would cooperate in the development of tract 2, including reasonable modifications to the 1988 ECR, to allow commercial development of tract 2, if Gulf Coast would convey the encroachment property to Wal–Mart (the 1988 Agreement). Whitehead, acting on behalf of appellants, relied upon such representations and agreement in conveying the encroachment property to Wal–Mart and executing the 1988 ECR.

During this time frame, Gulf Coast continued its efforts for development of a supermarket on tract 2 pursuant to Whitehead's agreement with Wal–Mart. In December 1987, Gulf Coast reached an agreement with its lender, Bank One, for the partners of Gulf Coast to each sign deficiency notes and to allow Bank One to foreclose on tract 2. The other two partners of Gulf Coast dropped out of the partnership but Whitehead and Martin, as the sole remaining partners of Gulf Coast,

continued their efforts to market and develop tract 2.

Whitehead and Martin, individually and on behalf of Gulf Coast, or as successors in interest of Gulf Coast, entered an agreement whereby Ford and Sturges would participate in the marketing and development of tract 2. In January of 1990, Sturges reached an agreement with Fleming Foods of Texas, Inc, (Fleming) under which the appellants would construct and lease to Fleming a supermarket on tract 2. A letter of intent evidenced the agreement between Fleming and Sturges, acting on behalf of appellants and signed January 31, 1990. Although tract 2 had been foreclosed upon by Bank One, the appellants had in place on that date a written agreement to repurchase tract 2.

Fleming furnished a lease form and would have executed a definitive lease agreement, provided that Wal–Mart approved requested revisions to the 1988/82 ECR. These modifications dealt primarily with a minor variation in the ratio of parking spaces to square footage of the Fleming supermarket, and approval of a new site plan which provided for a larger supermarket and eliminated the other retail space on tract 2. Pursuant to the 1988/82 ECR, Sturges, acting on behalf of appellants (including Whitehead and Martin on behalf of Gulf Coast), contacted the appropriate officials of Wal–Mart and requested the changes necessary to consummate the Fleming lease. Wal–Mart personnel were supportive of a supermarket on tract 2. Appellants' plans were enthusiastically received at both the local and corporate level of Wal–Mart. On January 8, 1990, Sturges sent a site plan to Delee Wood, property manager of Wal–Mart, for the purpose of obtaining approval of the changes necessary to accommodate the Fleming lease. Shortly thereafter, Wood represented to Sturges that she had obtained approval from the necessary people at Wal–Mart for the requested changes in the 1988 ECR and that Sturges should submit documen-

tation for execution by Wal–Mart to memorialize the revisions.

Around July of 1989, the Wal–Mart property division began efforts to purchase tract 2. In approximately November of 1989, Tom Hudson, acting as real estate agent for Wal–Mart, contacted Bank One and was informed by Bank One that tract 2 was already under contract. In early January of 1990, Hudson informed officials of Wal–Mart that if the ECR modification requested by the appellants were withheld it would in all probability "kill" the sale of tract 2 from Bank One to appellants, and the lease arrangement involving the Appellants and Fleming. Wal–Mart never revealed to appellants their efforts to reacquire tract 2 but instead encouraged appellants to proceed with their plans for development of a supermarket on tract 2.

Prior to the time appellants and Fleming could finalize their lease arrangement, Wal-mart, or its agents, informed Fleming that they wanted to acquire tract 2 for expansion; and that if they did not obtain this land on which to expand, Wal–Mart would move its store. Wal–Mart then refused to approve modification of the parking ratio set forth in the 1988/82 ECR, or to approve a new site plan for the 1988/82 ECR, allowing for a larger supermarket and eliminating the other retail space on tract 2. Appellants were then unable to consummate their transaction with Fleming. They then brought suit against Wal–Mart for breach of contract and tortious interference with prospective business relations.

In their first point of error, appellants allege the trial court erred in refusing to grant their motion for new trial based on the trial court's refusal to admit evidence of prior judgments and litigation against Wal–Mart during the exemplary damages portion of the trial.

Evidentiary rulings are committed to the trial court's sound discretion. *Owens–Corning Fiberglas Corporation v. Malone*, 972 S.W.2d 35, 41 Tex.Sup.Ct.J.

877, 882 (1998). A trial court abuses it discretion when it rules without regard for any guiding rules or principles. *Id.* Trial courts may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *Id.* We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Id.* We will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. Tex.R.App.P. 81(b)(1).

At trial, appellants offered evidence of five other lawsuits wherein Wal–Mart interfered with contractual relationships. Appellants attached certified copies of the pleadings and judgments from these five lawsuits to their appendix in support of their motion for new trial on exemplary damages. The trial court excluded that evidence and prohibited appellants from asking any questions regarding the five lawsuits.

The general rule in Texas is that prior acts or transactions by one of the parties with other persons are irrelevant, immaterial and highly prejudicial, and in violation of the rule that *res inter alios* acts are incompetent evidence, particularly in a civil case. *Texas Cookie Co. v. Hendricks & Peralta, Inc.*, 747 S.W.2d 873, 881 (Tex.App.—Corpus Christi 1988, writ denied); *Texas Farm Bureau Mutual Insurance Co. v. Baker*, 596 S.W.2d 639, 642 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.). An exception to the general rule states that:

> when the intent with which an act is done is material, other similar acts of the party whose conduct is drawn in question may be shown, provided they are so connected with the transaction under consideration in point of time that they may all be regarded as parts of a system, scheme or plan.

*Hendricks*, 747 S.W.2d at 881 (quoting *Baker*, 596 S.W.2d at 642). Thus, only

where "intent," and not merely the occurrence of the act itself, is sought to be proved by similar acts are they admissible. *Id.* "Other acts" evidence is admissible both to show willful intent in support of exemplary damages, and to show a plan or scheme. *Johnson v. J. Hiram Moore, Ltd.*, 763 S.W.2d 496, 500 (Tex.App.—Austin 1988, writ denied).

■ In awarding exemplary damages, the jury may consider a number of factors including (1) the nature of the wrong; (2) the frequency of the wrongs committed; (3) the character of the conduct involved; (4) the degree of the wrongdoer's culpability; (5) the situation and sensibilities of the parties involved; (6) the extent to which such conduct offends a sense of public justice and propriety; and (7) the amount needed to deter similar acts in the future. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981); *Campbell v. Salazar*, 960 S.W.2d 719, 729 (Tex.App.-El Paso 1997, writ denied).

In the present case, appellants attempted to offer the evidence of prior lawsuits against Wal–Mart in an effort to show "a pattern of conduct on the part of Wal–Mart." Each of the offered lawsuits involved an incident in which Wal–Mart interfered with an existing or prospective contract. In particular, appellants offered (1) a memorandum of decision finding Wal–Mart liable to K–Mart in a lawsuit in which Wal–Mart purchased a store that was already under lease to K–Mart; (2) two lawsuits involving Wal–Mart's acquisition of real property for store location already subject to existing or prospective contract rights; (3) a judgment against Wal–Mart for interfering with a contractual relationship between a contractor and sub-contractor on a Wal–Mart store; (4) an $800,000 judgment in a case in which it was alleged that Wal-mart interfered with the contractual relationship between one of its vendors and a manufacturer of clothing.

Exclusion of the evidence made it appear that Wal–Mart's interference with appellants was an isolated incident. In fact,

Wal–Mart's counsel argued to the jury "This is one isolated event, . . . ." Had the jury been aware that Wal–Mart had engaged in similar acts on at least five prior occasions, the jury probably would have returned a much higher exemplary damage verdict. The excluded prior lawsuit documents evidenced the frequency of similar wrongs Wal–Mart committed; the character of the conduct involved; the degree of Wal–Mart's culpability; the extent to which Wal–Mart's conduct offends a sense of public justice and propriety, and the amount needed to deter similar acts in the future. In addition, the prior lawsuits appellants sought to introduce were evidence of a course of conduct showing Wal–Mart's intent to interfere with prospective business relations. We find the trial court incorrectly excluded the above mentioned evidence of prior lawsuits and that the error caused the rendition of an improper judgment concerning punitive damages. *See* Tex.R.App.P. 81(b)(1). Point of error one is sustained. We need not address appellants' second point of error.

■ In its first cross point, Wal–Mart alleges that the appellants have no standing or capacity to recover under a tortious interference claim because they did not have an agreement or prospective agreement with Fleming Foods. Wal–Mart asserts that appellants' tortious interference claim is based on Wal–Mart's supposed interference with the "letter of intent" with Fleming. The letter of intent, sent by Sturges to L.G. Callaway of Fleming Foods of Texas Inc, stated:

> The Proposed agreement: 1. Will be in the form of a lease between Nederland Partners, Inc., comprised of James D. Martin, III, . . . Bruce H. Whitehead . . . and Harry W. Sturges, III . . . as Lessor; and Fleming Foods of Texas, Inc. as Lessee.

■ Wal–Mart alleges that because there is no evidence that "Nederland Partners, Inc." was ever formed, that appellants in their individual capacities had no

standing to sue for interference with the prospective lease with Fleming. To establish standing, a person must show a personal stake in the controversy. *In Interest of B.I.V.*, 923 S.W.2d 573, 574 (Tex. 1996); *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex.1984).

Standing consists of some interest peculiar to the person individually and not as a member of the general public. *Hunt*, 664 S.W.2d at 324. One has standing to sue if: (1) he has sustained, or is in immediate danger of sustaining, some direct injury as a result of the wrongful act of which he complains; (2) he has a direct relationship between the alleged injury and claim sought to be adjudicated; (3) he has a personal stake in the controversy; (4) the challenged action has caused him some injury in fact; or (5) he is an appropriate party to assert the public's interest in the matter as well as his own interest. *Marburger v. Seminole Pipeline Co.*, 957 S.W.2d 82, 89 (Tex.App.—Houston [14th Dist.] 1997, writ denied); *Rodgers v. RAB Investments, Ltd.*, 816 S.W.2d 543, 546, (Tex.App.—Dallas 1991, no writ).

Sturges, Martin and Whitehead entered into a letter of intent with Fleming. The letter of intent reflects that the three men were to form Nederland Partners, Inc, to build and own the supermarket, and lease it to Fleming. Whitehead testified that Nederland Partners, Inc. was a corporation that appellants contemplated forming but never formed, and the principals were to be Martin, Ford, Sturges and Whitehead. All were interested parties who would have profited from the prospective lease. Whitehead also testified that Sturges and Ford participated in profits and losses of the new investment entity. At the time Sturges entered into the letter of intent with Fleming and the contract with Bank One, he was acting on behalf of himself as well as Whitehead, Martin and Ford. Callaway, as the representative of Fleming, was aware that Sturges, Whitehead and Martin had an interest in the transaction.

The record reflects that appellants were directly involved with the building of a supermarket, and all sustained direct economic injury as a result of the wrongful act of Wal–Mart. All had a personal stake in the outcome of the transaction. Consequently we find appellants had standing to sue. Wal–Mart's cross-point one is overruled.

In their second cross point, Wal–Mart alleges there is no evidence or insufficient evidence to support an affirmative finding to jury question six[1]. In support of this argument they allege that Wal–Mart did not intentionally prevent appellants from contracting with Fleming for the purpose of harming appellants, and there was no reasonable probability that appellants would have entered into a lease with Fleming.

In passing on a "no evidence" point we may consider only the evidence and the inferences therefrom which tend to support the jury's verdict and disregard all the evidence and inferences to the contrary which are against the verdict and the findings of the jury. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). When reversal is sought on the ground of insufficiency of evidence to support a jury finding, we must consider and weigh all the evidence and we must reverse only if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex.1985); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

---

1. Jury Question six reads: "Did Wal–Mart wrongfully interfere with Plaintiffs' prospective contractual agreement to lease the property to Fleming?
    Wrongful interference occurred if a. there was a reasonable probability that Plaintiffs would have entered into the contractual relations, and b. Wal–Mart intentionally prevented the contractual relations from occurring with the purpose of harming plaintiffs."

Wal–Mart argues there was no evidence or insufficient evidence to show that it intentionally prevented appellants from contracting with Fleming. In response, appellants urge that Hudson's call to Callaway, Fleming's manager of store development of the Houston area, resulted in Fleming's cancellation of its proposed business transaction with appellants. The evidence at trial indicated that Hudson, Fuller, Watson and Wood conspired to destroy the transaction with Fleming. Hudson phoned Callaway in the early part of 1990. Hudson indicated to Callaway that he was representing Wal–Mart and gave him an ultimatum not to build the store. Hudson said that if the supermarket were built, Wal–Mart would relocate and close the existing store. Callaway, relying on that information, called Sturges and told him the deal was off. Anthony Fuller, the director of Wal–Mart Realty Company, acted as Wal–Mart's designated corporate representative at trial. He testified regarding Hudson's call to Callaway, that "whatever [Hudson] said, he did on behalf of Wal–Mart." Hudson stated at trial that Fuller and Watson instructed him to call Fleming.

In a letter by Hudson dated January 3, 1990, to Wal–Mart's real estate manager Sandra Watson, Hudson told Watson that appellants would "drop [their] contract" to purchase tract 2 from Bank One, if Wal–Mart denied appellants' request for ECR revisions. Wal–Mart did in fact deny the request for ECR revisions.

Delee Wood, property manager at Wal–Mart, testified by deposition that she maintained a file regarding both tracts of land and that she shredded the file after she wrote Sturges and told him that Wal–Mart would not amend the ECR agreement. Evidence from other Wal–Mart witnesses indicate that Wood's shredding of the file was not done in the ordinary course of business, but rather was an intentional destruction of evidence. The jury was entitled to presume that Wood's file contained notes of conversations with Fuller that would support a finding that Wal–Mart intended to harm appellants.

Wal–Mart's exultation in the success of its plan to destroy appellants' transaction is evidenced by a thank you note by Watson to Fuller, thanking Fuller for his help in destroying appellants' prospective agreement with Fleming.

■ Wal–Mart also argues that there was no evidence or insufficient evidence to support the jury's finding that there was reasonable probability that appellants would have entered into a lease with Fleming. Callaway described appellants' transaction with Fleming. He identified preliminary surveys and a site plan that had been developed particularly for the configuration of appellants' tract. Callaway and Sturges began negotiation of lease terms after preparation of a detailed floor plan and a preliminary construction budget.

Callaway testified that a comparison of Fleming's lease agreement and the letter of intent between appellants and Fleming reveal that all of the material terms of the transaction between appellants and Fleming had been discussed and agreed upon. Callaway had also conferred with Fleming's home office in Oklahoma City and obtained approval of the lease terms before including them in the letter of intent. According to Callaway, the only thing necessary to finalize the transaction was Wal–Mart's approval of the requested ECR revisions, and the execution of the lease by Fleming's Oklahoma City office. In Callaway's opinion, Fleming's home office would have executed the lease.

The above evidence amounts to more than a scintilla of evidence supporting the jury's finding to question six. In addition, we do not find the jury's answer to be against the overwhelming weight of the evidence as to be clearly wrong and unjust. Cross point two is overruled.

In their third cross point, Wal–Mart alleges there is no evidence or factually insufficient evidence to support the jury's answer to jury question seven because the

appellants failed to meet their burden to show that Wal–Mart acted without justification.[2] Wal–Mart argues that with respect to a tortious interference with prospective business relations case, it is the plaintiff's burden to prove the defendant lacked justification for its conduct. Wal–Mart alleges that appellants failed to meet this burden of proof. Appellants argue justification is an affirmative defense which Wal–Mart has the burden to prove.

The plaintiff has the burden of proving lack of justification or excuse in a tortious interference with prospective business relationship cause of action. *Hill v. Heritage Resources, Inc.,* 964 S.W.2d 89, 109 (Tex.App.—El Paso 1997, writ filed); *Tarleton State Univ. v. Rosiere,* 867 S.W.2d 948, 952 (Tex.App.—Eastland 1993, writ dism'd by agr.). However, other than the difference in burden of proof, justification involves the same type of proof as in a tortious interference with contract cause of action. A superior financial interest, for example, is recognized as justification or excuse. *Gillum v. Republic Health Corp.,* 778 S.W.2d 558, 566 (Tex.App.—Dallas 1989, no writ). Also, it must be demonstrated that the plaintiff suffered some actual damage or harm. The measure of such damages is, however, different from tortious interference with contract as the damages are not strictly based upon contract rules. *Hill,* 964 S.W.2d at 111.

Wal–Mart urges that its rights in the subject matter are superior to appellants' rights and that this reason is enough to overcome appellants' attempt to prove lack of justification. Wal–Mart asserts that appellants had no ownership interest in tract 2 and no rights under the ECR agreements. The record, however, reflects appellants had a written contract with Bank One to purchase tract 2. Hudson, acting on Wal–Mart's behalf, had pre-viously approached the bank about purchasing tract 2 and had been rebuffed.

Wal–Mart also argues appellants failed to demonstrate a lack of justification because Wal–Mart possessed valid contractual rights under the ECR agreements and appellants did not. The record reveals, however, that Wal–Mart's interference with appellants' contract was not based on rights under the ECR agreements. Fuller never attempted to justify the phone call to Hudson as being based on any exercise of rights under the ECR agreements. He testified that Wal–Mart's desire to purchase tract 2 had absolutely nothing to do with his decision to deny appellants' requested ECR amendments. There is no testimony from Fuller basing his direction to Hudson to contact Fleming on any alleged right of Wal–Mart under the 1988 ECR or 1982 ECR, and Wal–Mart has cited no such testimony in its brief. Fuller testified that after he denied appellants' ECR request, he asked Watson to come down, and that he and Watson subsequently instructed Hudson to contact Fleming. Fuller's deposition suggests that as of February 1990, he to that time he had no idea what Wal–Mart's rights or obligations were under the 1988 or 1982 ECR agreements.

Wal–Mart alternatively argues appellants failed to show Wal–Mart did not exercise a mistaken belief of its rights in good faith. Good faith is generally a fact issue to be determined by the trier of fact. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 691 (Tex.1989). As discussed above, the evidence at trial indicated that Hudson, Fuller, Watson and Wood conspired to destroy appellants' transaction with Fleming and were not acting in good faith.

We find there was more than a scintilla of evidence to support the jury's answer to

---

**2.** Question 7: "Was Wal–Mart's intentional interference with Plaintiffs' prospective lease agreement with Fleming justified?

An interference is "justified" if a party possesses an interest in the subject matter equal or superior to that of the other party, or if it results from the good faith exercise of a party's rights, or the good faith exercise of a party's mistaken belief of its rights."

question seven. Additionally, we do not find the jury's answer to question seven to be so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cross point three is overruled.

In cross point four, Wal–Mart alleges there is no evidence, or insufficient evidence, to support the jury's finding of lost profits resulting from Wal–Mart's tortious interference.

Wal–Mart urges that appellants did not meet their burden to present sufficient competent evidence of reasonably certain lost profits.

Recovery for lost profits does not require that the loss be susceptible of exact calculation. *Holt Atherton Indus. Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). By their nature, profits are more or less conjectural or speculative. *Pace Corp. v. Jackson*, 155 Tex. 179, 284 S.W.2d 340, 348 (1955). Nevertheless, a party must prove lost profits by competent evidence with "reasonable certainty." *Holt Atherton*, 835 S.W.2d at 84.

In the present case, the letter of intent sets out the terms of the lease. It includes all the terms necessary to complete Fleming's standard form for a "build and lease agreement," and Callaway's testimony reflects that he obtained approval from Fleming's home office for each term and provision. The primary term of the Fleming lease was to be twenty five years, with rent of $29,786.83 per month for three years and then escalating to $30,886.91 per month during the final twenty-two years. The total rent to be received was $9,226,470.12, with Fleming paying the taxes, insurance and maintenance. The evidence presented at trial, which included the expert testimony of Steve Eppes, a certified public accountant, reflects that after subtracting the estimated costs of acquiring the land and constructing the supermarket, and the other anticipated costs to appellants, and discounting the rent to be received to present value, appellants' profit from the lease would have

been more than $2,000,000. Appellants had a contract to purchase the land, and a construction company had already estimated the construction costs, and prepared a preliminary construction budget. Thus, both the revenue and the estimated costs were established with reasonable certainty. The evidence more than adequately supported the jury's damage award of $1,000,000 for profits appellants would have earned under the Fleming lease. Wal–Mart's fourth cross point is overruled.

In its fifth cross point, Wal–Mart asserts the evidence is factually and legally insufficient to support punitive damages. It argues appellants failed to show malicious conduct on the part of a Wal–Mart vice principal.

Conduct willfully committed with ill will, evil motive, or gross indifference or reckless disregard for the rights of others is malicious and will also support an award of exemplary damages. *Missouri Pacific R. Co. v. Lemon*, 861 S.W.2d 501, 517 (Tex.App.—Houston [14th Dist.] 1993, writ dism'd by agr.). Malice may be established by direct or circumstantial evidence, and a plaintiff need not prove the defendant acted with personal spite, but may simply prove the defendant committed negligent acts in reckless disregard of another's rights and with indifference as to whether that party would be injured. *Id.*

A plaintiff must establish the agent who acted with malice was acting within the scope of employment and was something more than a mere servant, i.e., is employed in a managerial capacity or is a vice principal of the corporation; or the acts of the agent were previously authorized, or subsequently adopted or ratified by the corporation; or the employee was unfit and the corporation was reckless in employing him. *See Purvis v. Prattco, Inc.*, 595 S.W.2d 103, 104 (Tex.1980); *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex.1967). A vice principal of a corporation includes corporate officers, those who have authority to employ,

direct, and discharge servants of the master, those engaged in the performance of non-delegable or absolute duties of the master, or those to whom the master has confided the management of the whole or a department or division of the business. *Missouri Pacific R. Co.,* 861 S.W.2d at 518.

As outlined above, the evidence at trial indicated that Hudson, Fuller, Watson and Wood conspired to destroy appellants' transaction with Fleming. Tom Hudson was a commercial real estate agent representing Wal–Mart. Anthony Fuller was the director of Wal–Mart Realty Company and acted as Wal–Mart's designated corporate representative at trial. Fuller testified that Hudson acted on behalf of Wal–Mart. Sandra Watson was Wal–Mart's real estate manager and Delee Wood was a property manager at Wal–Mart. The testimony presented at trial, indicating that these four individuals conspired to destroy appellants' transaction with Fleming, was certainly evidence of ill will, evil motive, or gross indifference or reckless disregard for the rights of others. Consequently, we find the evidence was legally and factually sufficient to support an exemplary damage award. Wal–Mart's fifth cross point is overruled.

In cross points six through nine, Wal–Mart challenges the breach of contract findings by the jury. We need not address these points because appellants, in the suit below, elected their remedy only on the tortious interference finding. Additionally, we do not address Wal–Mart's conditional cross point as it is conditioned on this court rendering in favor of Wal–Mart.

We affirm the judgment as to actual damages and reverse and remand this suit as to the exemplary damage issue only. *See Maeberry v. Gayle,* 955 S.W.2d 875 (Tex.App.—Corpus Christi 1997, no writ)(reversal and render of fiduciary duty claim warranted remand of exemplary damages only); *Newman v. Tropical Visions, Inc.,* 891 S.W.2d 713, 721 (Tex. App.—San Antonio 1994, writ denied)(find-ing gross negligence and exemplary damages can be determined upon a limited remand of a proceeding); *McElroy v. Fitts,* 876 S.W.2d 190, 199 (Tex.App.—El Paso 1994, writ dism'd by agr.)(the part of judgment awarding exemplary damages was reversed and remanded for retrial) *Olin Corp. v. Dyson,* 678 S.W.2d 650, 659 (Tex.App.—Houston [14th Dist.] 1984), *rev'd on other grounds,* 692 S.W.2d 456 (1985)(suit remanded on issues of gross negligence and punitive damages). The judgment of the trial court is affirmed in part, and reversed and remanded in part in accordance with this opinion.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.