The STATE of Texas, Appellant,

v.

Charlene WRIGHT, Appellee.

No. 12–91–00023–CR.

Court of Appeals of Texas, Tyler.

April 30, 1992.

**310**

Amy Blalock, Asst. Dist. Atty., Tyler, for State.

Jeff L. Haas, Tyler, for appellee.

COLLEY, Justice.

The State appeals under TEX.CODE CRIM. PROC. art. 44.01(a)(5) (Vernon Supp.1992),[1] from the trial court's order excluding the testimony of Lorene Choice, Don Choice, and Lesa Fay Black.[2] We will vacate the order as to Lorene Choice and affirm it as to the other witnesses.

Defendant/Appellee, Charlene Wright was first indicted in October 1989, for the capital murder of Mose Flowers. That indictment was later dismissed and Appellee was, on the 14th day of June, 1990, indicted for the murder of said victim.

During the pendency of the capital murder case, on December 18, 1989, the court entered a pre-trial order granting Appellee's discovery motion for the disclosure of the names of the State's witnesses and all statements made by Appellee material to the prosecution. The order required compliance therewith by the State on or before January 10, 1990. After the murder indictment was returned, the court, with notice in open court to all parties, ordered all pre-trial motions, and rulings thereon to be transferred from the capital murder case to the murder case.

On August 27, 1990, the State filed a "Discovery Compliance Form" containing the names of 33 prospective State witnesses, not including Lorene Choice, Don Choice, and Lesa Fay Black, certain physical evidence, an autopsy report, and various other documents not in issue here, as well as all oral statements allegedly made by Appellee to seven of the 33 listed witnesses.

The case was set for trial to a jury on Monday, January 28, 1991, after having been continued from several earlier settings on the motions of Appellee and the State.

At 3:15 p.m. on Friday, January 25, 1991, the State, for the first time, disclosed to Appellee's counsel that Lorene Choice, Don Choice, and Lesa Fay Black would possibly appear as witnesses for the State; and that Lorene Choice would testify that Appellee, "early [one] morning ... had come to her

---

1. Article 44.01(a)(5) reads as follows:

 (a) the State is entitled to appeal an order of a court in a criminal case if the order:
 ....
 (5) grants a motion to suppress evidence, a confession, or an admission if jeopardy has not attached in the case and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial importance in the case.

2. Although the trial court's written order names this witness as "Lesa Fay Choice," all other references to this individual are to "Lesa Fay Black." It is clear the person's correct surname is "Black."

house and asked her for a cigarette ... [Appellee] told her that she had just killed a man." Monday, January 28, 1991, Appellee filed a motion to exclude the testimony of these three witnesses on the grounds that "late disclosure is in violation of the Court's discovery order and that this disclosure is not sufficiently far enough in advance of trial to allow the [Appellee] an ample opportunity to investigate these matters." Appellee, in the alternative, "[requested] a continuance to allow her sufficient opportunity to properly investigate these matters." Appellee also alleged that the motion was "not sought for the purpose of delay, but so that justice may be done and so that constitutional guarantees of the U.S. and Texas Constitutions will be safeguarded."

The trial court immediately conducted a pre-trial hearing on Appellee's motion. At that hearing, two witnesses testified for the State, *viz.* Charlotte Turner, a former Tyler Police Detective,[3] and assistant district attorney, Kevin Henry, the designated prosecutor in this case. Appellee presented no witnesses, but requested that the court take judicial notice of the dates of trial of a case styled, State v. Henry Joe Pettigrew, cause number 4–89–230, on the court's docket. The trial judge granted the request and recited into the record that pre-trial proceedings were held in Pettigrew on October 22, 1990, that "jury selection began on ... October 23, 1990. The case [went] to trial on the 24th ... [but] was recessed ... until the 29th, 1990." The judge further stated into the record that the Pettigrew case again came to trial on October 29, and ended on November 8, 1990. Turner's testimony is that she returned to Tyler to testify in the Pettigrew case and this case sometime during that time frame. Turner recalled that at that time, "there was a phone call to the District Attorney's Office from [Tyler] Detective Russworm that he had received information from a confidential informant that someone named [Lorene] Choice might have information about this case." Turner

said she did not take the call and did not know who did. She said she learned of the call from written notes which had been placed with the file in this case on a desk in an unoccupied office used for storing the State's file in this case. Turner testified these notes recording Russworm's message were called to her attention by Kevin Henry, an assistant district attorney recently assigned to the case. Turner said that she was the lead investigator in the Wright case before she resigned and went into missionary training. She said that she had personally interviewed Lorene Choice shortly after the murder in 1989; but that Choice "[did not] give [her] any information about having talked to [Appellee]...." Turner later explained on cross-examination, that she "had no reason ... to believe that [Lorene Choice] had any information about the homicide whatsoever." Essentially, Turner said in 1989 she only questioned Lorene Choice about Appellee's place of residence, activities, and "where [she] might find her." Turner specifically said that during the initial interview, Lorene Choice did not tell her that Appellee had told her that "[she] just killed a man...." Turner said that in 1990, after she and the prosecution became aware of Russworm's telephone message, neither she nor any other person "contact[ed] Ms. Choice."

The record shows that Turner returned to Tyler on Thursday, January 24, 1991, and on the morning of January 25, met with the prosecution team "to [begin discussing] this case" and "rediscovered [Russworm's message] in the case file." From that point, the undisputed facts show that Turner, assistant district attorney David Dobbs, and investigator Max Scott requestioned Lorene Choice, who in response to specific questions, said "early [one] morning the [Appellee] had come to her house and asked ... for a cigarette ... [and] told her that she had just killed a man." On cross-examination, Turner candidly admitted that if Choice had been

---

**3.** Turner quit her law enforcement job in July of 1990 to enter training as a missionary in North Carolina.

questioned in October or November 1990 about Appellee's statement to her that she "would have answered our questions if we had directed them to her."

The testimony of Kevin Henry establishes that he was assigned to prosecute the case on January 24, 1991. He said on Friday morning, January 25, at about 11:00 a.m. or 12:00 noon, the statement from Lorene Choice was taken and that he disclosed the information to Appellee's counsel at about 3:15 p.m. Friday afternoon at a meeting previously arranged by the parties. Henry testified that because Russworm's message came from an unknown person, he believed the subject of the message needed to be verified before it was turned over to Appellee's counsel. On cross-examination, Henry affirmed Turner's testimony as correct and said that Russworm's message was first "check[ed] ... out" on Friday, January 25, 1991. Henry admitted that "[a] request was never issued [to any law enforcement officer or investigator] by the District Attorney's Office to find out what this lady [Lorene Choice] knew." At the close of the pretrial hearing, the trial court immediately (orally) granted Appellee's motion for exclusion of the testimony of the three witnesses, Lorene Choice, Don Choice, and Lesa Fay Black, and likewise, specifically excluded Appellee's statement to Lorene Choice, "I just killed a man." The trial court memorialized that ruling in a "Sanction Order Excluding Evidence" on the same day. In support of the sanction, the court found: that "[d]uring October or November, 1990, the State discovered ... the identity of the witness named Lorene Choice and that she had relevant information regarding the case"; that at the same time, the State "knew ... or should have known ... of the identity of the witness Don Choice and Lesa Fay Black," as well as the alleged statements made by Appellee; that the murder case was "finally ...

set number one for trial during the week of January 28th, 1991" [4]; that the State "first notified [Appellee's] counsel of the existence and identity of the [three] witnesses ... and the alleged admission by the [Appellee to Lorene Choice that she had just killed a man] ... on January 25, 1991"; that "the State knowingly and willfully failed to comply with the [Discovery Order]"; and, that "the less restrictive sanction of a continuance would not effectively sanction the State for its willful violation ... nor would a continuance discharge the court's responsibility [in respect to the] orderly administration of justice."

The State in its sole point of error argues that the court erred in excluding the testimony of the three witnesses because the evidence does not support the court's finding that the State willfully refused to comply with the discovery order.

Appellee responds, arguing that the trial court as the sole finder of fact, based on the record acted within her sound discretion in imposing the severe sanction of exclusion. Appellee argues that there is some evidence to support the trial court's finding that the State willfully disobeyed the discovery order,[5] hence, the trial court did not abuse its discretion in imposing the sanction.

It is well established that under TEX. CODE CRIM.PROC. art. 39.14 (Vernon 1979) (hereafter "article 39.14"), that "[d]ecisions involving pretrial discovery of evidence which is not exculpatory, mitigating, or privileged are within the discretion of the trial court." *Kinnamon v. State*, 791 S.W.2d 84, 91 (Tex.Cr.App.1990) (citations omitted). That question is not before us. Here, the question is, whether the trial court clearly abused its discretion in imposing the severe sanction of excluding the admission of evidence, rather than imposing the less severe sanction of granting Appellee's motion for continuance. In *Hollowell v. State*, 571 S.W.2d 179, 180 (Tex.

---

**4.** The record shows without dispute that two other first degree felonies were also scheduled for trial during that week.

**5.** While the Discovery Order is not included in the record before us, it is undisputed between

the parties that on December 18, 1989, the trial court ordered the State to disclose to Appellee the names of the State's witnesses and all statements written or oral made by Appellee material to the prosecution.

Cr.App.1978), the court held that evidence *willfully* withheld from disclosure under a discovery order should be excluded from evidence. 571 S.W.2d at 180. In *Hollowell,* the evidence withheld, the defendant's palm print found at the crime scene shortly after the commission of the crime, was in the possession of police investigators at the very time the defendant's discovery motions for disclosure of the same was granted. We do not believe that the dicta in *Lindley v. State,* 635 S.W.2d 541, 543 (Tex. Cr.App.1982), altered that rule. Article 39.14 provides in part that the trial court, on a defendant's motion "may order the State … to produce [certain materials] … which are in the possession, custody or control of the State or any of its agencies."

 We conclude under *Hollowell,* that absent bad faith, or willfulness on the part of the prosecution, the extreme sanction of exclusion should not be imposed under article 39.14. In the case before us, doubtless the prosecution was negligent in its failure to fully question Lorene Choice, either in 1989 or upon receipt of Russworm's message, but the record does not contain any evidence even suggesting, in support of the trial court's finding, that the State willfully or knowingly failed to supplement its response to the discovery order in October or November, 1990. Therefore, we sustain the State's point of error because we conclude that the trial court clearly abused her discretion in imposing the sanction of exclusion in respect to the witness Lorene Choice and her testimony. However, since the State has not presented a sufficient record to show any error of the court in excluding the testimony of Don Choice and Lesa Fay Black,[6] we overrule the State's point of error as to these persons.

Hence, we vacate the sanction order of January 28, 1991, as it applies to Lorene Choice, but affirm the order in respect to Don Choice and Lesa Fay Black.

---

**6.** See Tex.R.App.P. 50(d) (Vernon's Special Pham- plet 1992).