**The STATE of Texas, Appellant,**

**v.**

**Joe Edward LaRUE, Appellee.**

**No. 09–03–139 CR.**

Court of Appeals of Texas, Beaumont.

Submitted April 29, 2003.

Decided May 15, 2003.

Tom Maness, Criminal District Attorney, Rodney D. Conerly, Assistant Criminal District Attorney, Beaumont, for appellant.

Douglas M. Barlow, Beaumont, for appellee.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

DAVID B. GAULTNEY, Justice.

Defendant Joe Edward LaRue was indicted for the 1989 murder of Donna Pentecost. Finding the State willfully violated a discovery order, the trial court granted LaRue's motion to suppress DNA evidence. The State filed this interlocutory appeal of the suppression order.

### JURISIDICTION

■■■ We have jurisdiction under TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (Vernon Supp.2003). The State may appeal a court order granting a motion to suppress evidence if jeopardy has not attached in the case, and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence is of substantial importance in the case. *Id.* The trial court granted LaRue's motion to suppress evidence, jeopardy has not attached, and the State made the appropriate certification. The trial court entered a stay order pending the disposition of this appeal. *See* TEX.CODE CRIM. PROC. ANN. art. 44.01(e) (Vernon Supp.2003).

### STANDARD OF REVIEW

■■■ In reviewing an order suppressing evidence, appellate courts, as a general rule, give almost total deference to a trial court's determination of historical facts that the record supports. *See Guzman v.*

*State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). The trial court, as factfinder in a discovery dispute, is entitled to believe or disbelieve the witnesses who testify at the suppression hearing. *See State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000). An appellate court reviews *de novo* (a) a pure question of law where the facts are undisputed and (b) mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App.1999) (questions of law); *Guzman,* 955 S.W.2d at 89 (mixed questions of law and fact).

The construction of the discovery order and the meaning of "willful" in this context are issues of law. *See generally Hampton v. State,* 86 S.W.3d 603, 611 (Tex.Crim. App.2002) (Meaning of words and phrases is a question of pure law.). Whether the prosecutor's conduct in this case was willful is a mixed question of law and fact. *See generally Guzman,* 955 S.W.2d at 87–88 (explaining review of mixed questions of law and fact). We must determine whether the record supports a finding of willful misconduct within the meaning of that term in this context.

### THE DISCOVERY

A chronology of the discovery dispute is set out below:

March 30, 2000: State submits items of evidence to lab for DNA testing and analysis, including oral swabs, oral slides, DNA extracts and blood cards from Pentecost, and blood vial and bloodstain from LaRue.

April 28, 2000: State submits items of evidence, including a shirt from Pentecost's body and a cigarette butt, to DNA lab for testing and analysis.

September 12, 2000: State receives lab report containing the results of the

scientific analysis on the March 30 and April 28 submissions.

November 1, 2001: The grand jury indicts LaRue for Pentecost's murder.

November 7, 2001: Trial court appoints defense counsel.

December 5, 2001: State submits additional items of evidence, including fingernail samples, hair, and swabs from Pentecost, to lab for DNA testing and analysis.

December 14, 2001: Defense counsel files a motion for discovery.

January 25, 2002: Trial court grants discovery motion.

April 17, 2002: State receives a report detailing the results of the analysis of material submitted to lab on December 5, 2001.

January 3, 2003: State provides DNA test results from September 12, 2000, lab report to defense counsel after several requests by defense counsel.

January 12, 2003: State designates expert witness.

January 31, 2003: Prosecutors and defense counsel meet. State turns over bulk of discovery material, including witness list, autopsy report, statements by LaRue, lab submission reports, and multiple page summary prepared by State.

February 13, 2003: State provides copy of lab report from April 17, 2002.

February 13, 2003: Jury selection begins.

March 3, 2003: After completion of voir dire, prosecutor announces that a hair under a fingernail scraping is also available for testing and asks whether defense counsel wants the testing done.

March 5–7, 2003: Trial court holds hearing on suppression issues.

March 7, 2003 Defendant files motion to suppress.

March 12, 2003: Trial court enters findings of fact and conclusions of law and grants the motion to suppress.

## WILLFUL

■ The trial court found the DNA evidence was willfully withheld. Evidence willfully withheld from disclosure under a discovery order should be excluded from trial. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex.Crim.App.2000); *Hollowell v. State*, 571 S.W.2d 179, 180 (Tex.Crim.App.1978). In this context, an act is willful if the act is done voluntarily and intentionally, with the specific intent to disobey the law. *See* BLACK's LAW DICTIONARY 1599 (6th ed.1990).

## THE DISCOVERY ORDER

■ In December 2001, defense counsel filed a motion for discovery, requesting production of specified categories of evidence. The trial court granted the motion on January 25, 2002. No separate written order was prepared. Instead, at the bottom of the first page of the discovery motion, the trial judge wrote "[g]ranted 1–25–02." The notation did not specify a date for the State's production of the evidence, and the motion did not request one. The only suggestion of a time frame for production was defendant's request in his motion that the production and inspection take place at a time and in a manner that seemed "right and proper" to the trial court.

Article 39.14(a) of the Texas Code of Criminal Procedure states as follows:

Upon motion of the defendant showing good cause therefor and upon notice to the other parties, the court in which an action is pending may order the State before or during trial of a criminal action therein pending or on trial to produce and permit the inspection and

copying or photographing by or on behalf of the defendant of any designated documents, papers, written statement of the defendant, (except written statements of witnesses and except the work product of counsel in the case and their investigators and their notes or report), books, accounts, letters, photographs, objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody or control of the State or any of its agencies. *The order shall specify the time, place and manner* of making the inspection and taking the copies and photographs of any of the aforementioned documents or tangible evidence; provided, however, that the rights herein granted shall not extend to written communications between the State or any of its agents or representatives or employees. Nothing in this Act shall authorize the removal of such evidence from the possession of the State, and *any inspection shall be in the presence of a representative of the State.*

TEX.CODE CRIM. PROC. ANN. art. 39.14(a) (Vernon Supp.2003) (emphasis added). The statute requires that the discovery order specify the time, place, and manner of making the copies and photographs of the documents, and also requires that any inspection shall be in the presence of a representative of the State. *Id; see also Kinnamon v. State,* 791 S.W.2d 84, 91–92 (Tex.Crim.App.1990), *overruled on other grounds, Cook v. State,* 884 S.W.2d 485, 491 (Tex.Crim.App.1994) (Trial court did not err in failing to specify in the discovery order the time, place and manner to produce evidence when the defendant did not ask the court do so.).

No written order specifying the "time, place and manner" for production was entered in this case. The State was ordered to produce the evidence and the State did

so: some evidence was produced five weeks before jury selection, some a month before jury selection, and some on the day of jury selection. Since the order contained no date by which the evidence was to be produced, the production did not violate any express term of the order. *See Murray v. State,* 24 S.W.3d 881, 893 (Tex. App.-Waco 2000, pet. ref'd) (There was no violation of court's discovery order where no deadlines were imposed by trial court.).

■ Nevertheless, a reasonable construction of the discovery order in this case would require production of the DNA evidence at a time sufficient to permit defendant to analyze the evidence or otherwise prepare his defense. Yet, even considering this implicit timeliness requirement of the order, the DNA evidence should not have been suppressed. Under the circumstances in this case, the appropriate solution to the discovery dispute was a continuance of the trial to afford defendant time to prepare his defense to the DNA evidence.

THE RECORD

Testimony from the prosecutor reveals he was involved in the prosecution of another capital murder from October to mid-November 2002. Shortly after that, he understood he was being assigned to a different court and that someone else would be taking over the LaRue case. The prosecutor testified he "put this case out of [his] mind because it was no longer at that point [his] responsibility." Not until the Christmas holidays did he understand he would be remaining on the case. In early January 2003, he began to produce the ordered discovery.

The record reflects that the customary practice in Jefferson County is for the prosecutor and the defense attorney to arrange a mutually convenient date to

handle evidence production. The record reveals defense counsel asked several times for discovery both by phone and in person. The defense knew about the State's DNA evidence and had requested and received the trial court's permission to have experts, when defendant deemed it necessary, for DNA and forensic analysis. Assuming the State failed to agree to a mutually convenient date to handle the evidence production, defendant had a remedy. Article 39.14(a) provides that remedy in the form of an order specifying the time, place, and manner the production must occur.

The prosecutor acknowledged at the suppression hearing that he had made a "mistake." He explained he had not responded in a timely fashion to defense counsel's requests, in part because of some confusion over which prosecutor would be responsible for the case. While this confusion does not excuse the State's failure to produce the evidence when requested by defense counsel, neither does the record support the trial court's "willful" finding in these circumstances.

▮▮▮▮▮ The trial court also concluded that LaRue's constitutional rights of due process and the effective assistance of counsel were violated by the State's conduct. Specifically, the trial court found the State's conduct necessitated LaRue's foregoing his right to a speedy trial because of the lack of timely discovery. We disagree. As the Court of Criminal Appeals recently stated, "In determining whether an accused has been denied his right to a speedy trial, a court must use a balancing test 'in which the conduct of both the prosecution and the defendant are weighed.'" *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex.Crim.App.2003) (quoting *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). The Court cited *Barker* in stating the following:

> The factors to be weighed in the balance include, but are not necessarily limited to, the length of the delay, the reason for the delay, the defendant's assertion of his speedy trial right, and the prejudice to the defendant resulting from the delay. No single factor is necessary or sufficient to establish a violation of the right to a speedy trial.

*Dragoo,* 96 S.W.3d at 313 (citations omitted). We have noted the length of time the State took to produce the evidence, and the State's explanation for the time. Against this length of time we balance other factors. LaRue had earlier filed various *pro se* motions, including two motions for speedy trial, that he later withdrew. Defense counsel explained he persuaded LaRue to withdraw the speedy trial motions because of the State's failure to produce the evidence under the discovery order. The Motion to Disregard Pro-Se Motions was signed and agreed to by LaRue and defense counsel, and does not reference any discovery issue. The defense did not file a motion to suppress the DNA evidence until three weeks after the beginning of jury selection. The record contains no evidence that the trial court was asked to enter an order in conformity with the "time, place and manner" requirements of art. 39.14(a) when the speedy trial motion was withdrawn or at the time of any prior continuance. LaRue has not shown that his right to effective assistance of counsel was abridged, nor has he shown that his defense has been impaired by any delay. Under these circumstances LaRue's right to a speedy trial would not be violated by a continuance designed to give him additional time to defend against the DNA evidence.

The record reflects that at the conclusion of the suppression hearing the trial court carefully considered the fairness of proceeding with the trial, and considered the importance of the issue to the State and to the defendant. Both the State and the defendant are well represented by able counsel effectively articulating their respective legal positions and both urged the trial court to proceed with the trial. Although neither LaRue nor the State moved for a continuance of the latest trial setting, the trial court clearly could have ordered a continuance. *See Osbourn v. State,* 59 S.W.3d 809, 813 (Tex.App.-Austin 2001), *aff'd,* 92 S.W.3d 531 (Tex.Crim.App. 2002). The trial court initially decided to order a continuance on its own based on a finding that the prosecutor's conduct was not willful. Only after the State urged the court not to order a continuance, because the defendant had not asked for one, did the trial court finally conclude the discovery conduct was willful and suppress the evidence.

The record does not support a finding of intentional disobedience of the trial court's discovery order by the prosecutor. Under the circumstances, the DNA evidence should not have been suppressed. Rather, if defendant were "surprised" or otherwise at a disadvantage, he should have requested a continuance, and a continuance order could have been entered. *See generally Ramirez v. State,* 815 S.W.2d 636, 649 (Tex.Crim.App.1991) (State failed to produce evidence in response to discovery order, but appellant did not show surprise and did not move for continuance.); *Osbourn,* 59 S.W.3d at 816 (There was no evidence the State acted in bad faith in failing to disclose the evidence or willfully failed to respond to the trial court's order under art. 39.14(b); Osbourn could have anticipated the evidence, and he failed to request a recess, postponement, or a continuance.); *see generally Wood v. State,* 18 S.W.3d 642, 647–48 (Tex.Crim.App.2000) (Trial court did not abuse its discretion in denying motion for mistrial where defendant did not receive copy of subpoenaed evidence until trial; defendant did not request continuance, a much less drastic remedy.).

## CONCLUSION

The record does not reflect a willful violation of the discovery order. Any discovery time constraints can be resolved with the less drastic remedy of a continuance. LaRue still can be given sufficient time to prepare his defense to the evidence. The trial court's suppression order is reversed, and the case is remanded to the trial court for proceedings consistent with this opinion.

REVERSED AND REMANDED.

DON BURGESS, Justice, dissenting.

I respectfully dissent.

## THE STANDARD OF REVIEW

The majority starts in error with the standard of review. They state the appropriate standards,[1] but do not explicitly

---

1. As noted by the Court of Criminal Appeals in *State v. Ross,* 32 S.W.3d 853, 856 (Tex. Crim.App.2000),

   While discussing the appropriate level of appellate review, we stated in *Guzman v. State:*

   [T]he appellate courts, including this Court, should afford almost total deference to a trial court's determination of the his-

   torical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. The appellate court should afford the same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an

state whether they are utilizing the abuse of discretion standard or the de novo standard. It appears they are using the de novo standard. They aver the meaning of willful is a question of law citing generally *Hampton v. State*, 86 S.W.3d 603, 611 (Tex.Crim.App.2002). However, *Hampton* states: "The meaning of words and phrases *used in a statute* is a question of pure law."

This court should afford almost total deference to the trial court's determination of the historical facts since the trial court's fact findings are based on an evaluation of credibility and demeanor and we should afford the same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," since the resolution of those ultimate questions also turns on an evaluation of credibility and demeanor. We may only review de novo "mixed questions of law and fact" not falling within this category. *See also Carmouche v. State*, 10 S.W.3d 323 (Tex.Crim. App.2000).[2]

## WILLFUL

The majority resorts to Black's Law Dictionary for their definition of willful. I contend there are other definitions the trial court may have considered. For example, *In re Davis*, 82 S.W.3d 140, 148 (Tex. Spec.Ct.Rev.2002) (citing *In re Barr*, 13 S.W.3d 525, 539 (Tex.Rev.Trib.1998, no appeal)), said:

> Willful conduct requires a showing of intentional or grossly indifferent misuse of judicial office, involving more than an error of judgment or lack of diligence.

*Bell*, 894 S.W.2d at 126. Contrary to Judge Davis's assertion, however, a judge need not have formed the specific intent to violate the Code; as long as he intended to engage in the conduct for which he is disciplined, he is guilty of a willful violation of the Code.

Thus, under this definition, the State did not have to form the specific intent to withhold the DNA test results, as long as they intended to engage in the conduct, i.e., not comply with the discovery order. In another context, an allegedly defamatory statement is considered "willful" if it was made knowingly and intentionally in conscious disregard of the rights of others. *See Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 455 (Tex.App.-Dallas 2002, no pet.). Consequently the trial court, if he felt the State's actions were done with a conscious disregard for the rights of Mr. LaRue, could have concluded they were "willful". In addition, in determining intent, the trial court could consider similar acts of the State provided they were connected with the transaction under consideration in point of time so that they may all be regarded as parts of a system, scheme or plan. *See Sturges v. Wal–Mart Stores, Inc.*, 39 S.W.3d 608, 613–614 (Tex. App.-Beaumont 1998), *rev'd on other grounds*, 52 S.W.3d 711 (Tex.2001).

## THE DISCOVERY ORDER

The majority correctly acknowledges:

> Nevertheless, a reasonable construction of the discovery order in this case would require production of the DNA evidence at a time sufficient to permit

---

evaluation of credibility and demeanor. The appellate courts may review de novo "mixed questions of law and fact" not falling within this category. [citations omitted]

**2.** A case this writer is quite familiar with, having written the original, *Carmouche v. State*, 989 S.W.2d 392 (Tex.App.-Beaumont 1999, pet. granted) and the remand, *Carmouche v. State*, 22 S.W.3d 674 (Tex.App.-Beaumont 2000, pet. ref'd).

defendant to analyze the evidence or otherwise prepare his defense.

Then they conclude:

> Yet, even considering this implicit timeliness requirement of the order, the DNA evidence should not have been suppressed. Under the circumstances in this case, the appropriate solution to the discovery dispute was a continuance of the trial to afford defendant time to prepare his defense to the DNA defense.

However, the defendant specifically noted he was not requesting a continuance and objected to the Court sua sponte granting a mistrial. The State also objected to the suggested mistrial. In light of these objections, the court was required to rule on the motion to suppress.

## THE RECORD

The majority sets out their interpretation of the record. In light of the "almost total deference" doctrine, I believe the relevant findings of fact entered by the trial judge are a more correct reflection of the record. The trial judge found:

> 7. This Court finds that counsel for defendant made numerous specific and timely requests that the State photocopy or provide the results of the DNA analysis and any other scientific testing or analysis over the ensuing year. This Court finds that those requests were made to the State both in person and by telephone as a part of defense counsel's efforts to obtain the subject reports and evidence and submit same to independent experts for consultation, review, and further analysis. This Court finds that counsel for defendant had sought and obtained experts pursuant to *ex parte* orders granted by this Court under Article 26.052 of the Code of Criminal Procedure and counsel was trying to obtain the evidence for the preparation of the defense. This Court finds that

the efforts by defendant to obtain copies of the evidence in possession of the State extended over a span of a year, with increasing efforts to obtain the evidence as trial grew closer. This Court further finds that the cause was continued from a trial setting in August, 2002, in part because of the failure of the State to provide discovery of the evidence. This Court finds that the State was amply aware that the subject evidence was in its possession and had even announced to the news media that the evidence existed. This Court finds that the assistant district attorney assigned to the case and to whom the request had been made was under the belief that he would not be the attorney prosecuting the case, and that he did not properly respond to the requests but instead worked on other matters. This Court finds that the election not to provide the evidence was a willful choice made by an agent of the State. Defendant filed a motion asserting his right to a speedy trial prior to the next trial setting in November, 2002. This Court finds that counsel for defendant was unable to obtain the previously ordered discovery of the subject items at that time prompting defendant to withdraw his request for a speedy trial because counsel was unprepared for trial based on his inability to obtain copies of the evidence. This Court reset the case at that time for trial on February 10, 2003. During the time period from November, 2002, through the end of the year 2002, this Court finds that the State, through its agent assigned to the case, again elected to work on other matters rather than provide the evidence because, as the State prosecutor testified, "the heat was off" when the trial was reset. This Court finds that was again a willful choice on behalf of the State. This Court finds that around the Christmas

holidays, 2002, the assistant district attorney to whom the case had been assigned during the entire span of defendant's efforts to obtain the evidence was informed that he would in fact remain as the attorney for the State in the case. This Court finds that counsel for defendant again made efforts of [sic] obtain copies of the documentary evidence including scientific reports prior to the end of 2002 and informed the prosecutor that he would be out of the state for Mandatory Continuing Legal Education to maintain criminal law certification from January 3, 2003, through January 9, 2003.

11. This Court finds that defense experts require up to 3 months to properly address such scientific evidence upon receiving it. The State testing procedures required much longer. This Court finds it egregiously unreasonable and a denial of due process and the effective assistance of counsel to expect defense counsel to be able to meet such scientific evidence requiring months to address while at the same time dealing with exculpatory evidence and basically all other discovery provided on the eve of trial, and some of it on the day of trial.

12. The State conceded that it made serious errors and omissions in failing to provide the discovery in a timely manner and indicated to this Court that it agreed to whatever action this Court deemed appropriate to correct the errors of the State and ensure a fair trial herein. This Court entered findings that the conduct of the State in failing to provide timely discovery, while not malicious, was in fact willful. At the conclusion of the hearing on March 7, 2002, this Court adopted the prior findings made and noted that the Court heard additional information leading the Court to conclude that the conduct of the State was extremely negligent but not willful. That conclusion was prematurely made. The State's conduct placed the defendant in the position of choosing whether he wished to exercise his right to a fair trial, or a speedy trial, both constitutionally guaranteed. Defendant urged the proper remedy would be to proceed to the trial as scheduled and exclude the evidence so that both a speedy and fair trial would be conducted. This Court concluded that both could not be achieved by proceeding to trial on March 17, 2003, and admitting the evidence. This Court sought a lesser remedy than to exclude the evidence and still to assure a fair trial for defendant. Despite the details of the record, including but not limited to, the State's own admission of serious errors and omissions in not timely providing the required discovery, coupled with the obvious conclusion that for defendant to proceed to trial would result in serious jeopardy of his due process rights concession that, the State continues in its persistence that this matter proceed to trial and the evidence be admitted. This Court finds that the State's conduct in failing and refusing to provide the Court-ordered discovery in a fair and timely fashion exceeds negligent conduct, and was in fact a willful and egregious effort by the State to defeat defendant's constitutional rights. One example of conduct weighing heavy on this finding is the undisputed fact of the State's faxing certain evidence to counsel just prior to jury selection, knowing that counsel was attending a week-long seminar. This Court views such as gamesmanship at the expense of defendant's rights to a fair trial.

This Court expressed its intention to dismiss the jury which had been selected, declare a mistrial, and reschedule the case for trial after counsel for defen-

dant had an appropriate opportunity to address the discovery provided by the State, even taking such action over the objection of defendant who wished to proceed with trial as scheduled and exclude the evidence. The State thereupon objected and expressed to this Court its desire to proceed to trial on March 17, 2003, as scheduled, because the State was ready and did not want any delays, and additionally wanted this Court to admit the evidence. Having reviewed all the testimony concerning this issue, considered all comments of counsel as officers of this Court, observed the demeanor of the witnesses and officers of this Court, and noting the fact that the State again expressed its wish to proceed to trial on March 17, 2003, and to present the scientific evidence so egregiously denied the defendant, this Court has reached the conclusion that the actions of the State in choosing not to provide the discovery in a timely manner was in fact egregious and more willful. The final comments of the State indicating its desire to exclude any lesser remedy demonstrates the willfullness of the conduct in withholding the evidence and a complete disregard of the constitutional rights of the defendant in this case.

13. This Court further finds that the State claims in its correspondence dated January 3, 2003, a copy of which the State forwarded to this Court, that the State states it has other evidence to substantiate the allegations in the indictment independent and separate from the complained-of DNA analysis and other scientific evidence. Additionally, this Court finds that the State tendered to defendant on February 12, 2003, a list of potential witnesses including 26 civilian witnesses, 28 law enforcement witnesses and 19 scientific/medical witnesses. This Court concludes by such documents tendered to this Court by the State that exclusion of the DNA analysis evidence does not necessarily result in the termination of the prosecution herein.

14. This Court finds the above as facts, based upon the entire record of the hearings on this issue, the demeanor and credibility of the witnesses, the documents presented to the Court and those filed of record, and the arguments and comments of counsel as officers of the Court.

## CONCLUSION

The trial judge's conclusions of law are quite telling and appropriate; he concluded:

It is a denial of due process of law and a denial of the rights of a defendant to a fair trial and the effective assistance of counsel for the Sate to willfully control and manipulate the Court-ordered production of evidence. The conduct of the State places the defendant in a position of having to elect between his constitutional rights to a speedy trial or a fair trial by the willful election not to provide significant discovery until the eve of trial. The State has tendered to this Court a document from which the Court concludes that the State claims to be able to proceed with the prosecution of this case even in the absence of the DNA evidence, in part because the State intends to call an inmate to whom the State claims defendant admitted guilt to the alleged offense of capital murder. Additionally, the State has placed this Court and defendant on notice that it has 73 potential witnesses to call in the trial of this case. The State has represented to this Court that the State also has available evidence such as an autopsy report and other scientific evidence, including fingerprints. This Court concludes that the granting of the defense

request regarding DNA evidence and analysis does not result in the termination of the prosecution. See *Gribble v. State,* 808 S.W.2d 65 (Tex.Cr.App. 1990) *cert. denied, Texas v. Gribble,* 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991). While the State has stated that it intends to appeal this Court's ruling, presumably under Article 44.01 of the Texas Code of Criminal Procedure, this Court notes that the Texas Court of Criminal Appeals has held that "[T]he purpose of the statute is to permit the pretrial appeal of erroneous legal rulings which eviscerate the State's ability to prove its case." *State v. Medrano,* 67 S.W.3d 892 (Tex.Cr.App.2002). This Court concludes that the partial granting of the defense Motion to Suppress Evidence by exclusion of the DNA analysis and evidence does not eviscerate the State's ability to prove its case, based upon the documents tendered to this Court by the State. This Court also notes that the State could have proceeded to trial *with* the willfully withheld evidence by this Court's first intended ruling to direct a mistrial and reschedule the case until such time after defendant had time to address the evidence. This Court conducted a balancing test and determined that such action by this Court would best serve the interest of justice and of all parties, even over defendant's objection; however, the State objected to such action. This Court now concludes that this case should proceed forward as scheduled and the evidence excluded.

The law is clear from the Texas Court of Criminal Appeals that under Article 39.14 of the Texas Code of Criminal Procedure, "evidence willfully withheld from disclosure under a discovery order should be excluded from evidence." *Hollowell v. State,* 571 S.W.2d 179 (Tex. Cr.App.1978). In *Hollowell,* the wrong-

fully withheld evidence was a palmprint in a burglary case which was clearly the subject of the order for discovery. The court found that State's contention that it was unaware of the print to be untenable because the prosecutor had a duty to know what evidence was at his disposal. While the admission of that print was harmless in light of the fact that the accused was caught at the scene and at trial admitted his presence at the scene, no such argument can be made herein. The State made no argument that it has been unaware of the evidence at any time. The State urges the significance of the withheld DNA evidence and this Court concludes that this is exactly the type of harmful evidence the Court of Criminal Appeals has said must be excluded when willfully withheld. In *State v. Wright,* 830 S.W.2d 309 (Tex.App.-Tyler 1992), that appellate court held that exclusion of testimony of a witness who had not been disclosed pursuant to a discovery order was too harsh a sanction and the defendant's request for a continuance should have been granted instead. Contrary to this case, the actual nature of the testimony was not known to the prosecutors or the chief investigators assisting at trial until the eve of the trial and the prosecutor thereafter promptly notified the defense of the evidence as soon as it became known to the prosecutor. In this cause, the record establishes that defendant first learned of the DNA evidence the State is proffering through news media accounts about the DNA evidence based on comments from this office of the district attorney months ago. No evidence established that the office of the district attorney was unaware of the evidence, but instead established just the opposite. The State clearly had the DNA report dated September 12, 2000, at the time

defendant was indicted as well as on the date the motion to turn over this exact evidence was granted on January 25, 2002. In fact, the State has urged that this evidence is part of the reason defendant was indicted on an allegation that was previously dismissed. Likewise, there is no evidence or even a suggestion by the State that the DNA report dated April 17, 2002, was not well within their knowledge and possession for over 10 months prior to trial. This Court concludes that this evidence was in the State' quiver with the full knowledge of the office of the district attorney and with its full intent to use it at the trial of this case for many months, even years before it was finally disclosed to defendant. The *Wright* court concluded that absent bad faith or willfulness of the part of the prosecution, the extreme sanction of exclusion should not be imposed under Article 39.14 of the Texas Code of Criminal Procedure. This Court determines that this fact situation is not one in which the prosecution was unaware that it had such evidence as in *Wright*. In fact, the State urges its significance now, yet offers no reasonable explanation as to why the State chose to make no effort to comply with the order of this Court to turn over the evidence to defendant until days before trial, or even on the day of trial. Such demonstrates willfulness as described by the *Wright* court warranting exclusion of the evidence.

Additionally, the conduct of the State denies defendant due process of law and the effective assistance of counsel. In *Wynne v. State*, 676 S.W.2d 650 (Tex. App.–Fort Worth, 1984), the State was allowed to present the testimony of two experts regarding the insanity defense even though their reports were not filed or provided to the accused as required by law in advance of trial. The appellate court held that failure of the experts to provide reports to defense counsel as required by law was a denial of due process of law. Counsel for the defendant cannot provide effective assistance of counsel under the 6th Amendment to the United States Constitution when the State makes it absolutely impossible to be prepared for trial by willfully withholding evidence. Identically, this Court concludes that the conscious choice of the State to fail to comply with the direct order of this court to provide the scientific reports and other discovery would deny defendant due process of law if the evidence were to be admitted at trial, especially with the insistence of the State that the case proceed to trial *with* the evidence as scheduled on March 17, 2003. The State in effect has caused defense counsel to be ineffective in violation of the 6th Amendment. If the defense could not meet and address the expert testimony of two psychiatrists in the absence of their reports in *Wynne*, this Court concludes no defendant could meet and address complicated DNA and scientific evidence that took the State 5 ½ months to test and report when that evidence is provided 41 days before trial or even on the day of trial as is the case before this Court. The State urges no action by this Court to correct this egregious error by the State and this Court concludes that the remedy is to proceed to trial and exclude the evidence the State willfully chose to withhold.

It is neither easy nor pleasant for a trial judge to suppress evidence, especially compelling and necessary evidence.[3] This

---

**3.** As the only member of the court who has experienced this task, I have particular insight.

judge made the only decision he felt was available, under the record and considering the ultimate legal positions of the State and the defendant. The rules of procedure and precedent require this court to uphold the trial court if there is any legal theory to do so. Not only must we do this, we should do it. That is the underlying crux of the "almost total deference" doctrine. Trial judges view the witnesses, they are aware of all the actions of the parties, they see the big picture. Therefore, when they make the tough, even courageous decisions to suppress evidence, appellate courts should defer to that decision when there is support for the decision in the record or even when the record is ambiguous.

Consequently, I would affirm the trial judge. Because the majority does not, I must dissent.