IN THE COURT OF CRIMINAL APPEALS


OF TEXAS







NO. PD-985-03






THE STATE OF TEXAS



v.



JOE EDWARD LARUE, Appellee






ON DISCRETIONARY REVIEW


FROM THE NINTH COURT OF APPEALS


JEFFERSON COUNTY






 Womack, J., delivered the opinion of the Court, in which Keller, P.J., and
Meyers, Keasler, Hervey, Holcomb, and Cochran, JJ., joined. Cochran,
J., filed a concurring opinion, in which Meyers and Holcomb, JJ., joined.
Johnson, J., filed a dissenting opinion, in which Price, J., joined.



 In this case, we must determine whether the exclusion of evidence was an appropriate sanction for the State's violation of a discovery order. The specific issue before us
is whether the court of appeals correctly held that the trial court erred in finding the
State's conduct to be a "willful" violation of the order and in excluding the untimely
disclosed evidence on that basis. Because we find that the State's conduct was not willful,
we affirm the court of appeals' holding that the evidence should not have been excluded.

 The underlying facts of this case are essentially undisputed. The appellee was
indicted for capital murder on November 1, 2001. The following is a timeline of the
relevant events:

March 30, 2000: State submits evidence to lab for DNA testing -- oral swabs, oral
slides, DNA and blood cards from victim, blood vial and bloodstain
from the appellee.


April 28, 2000: State submits evidence to lab for DNA testing -- victim's shirt and
cigarette butt.


Sept. 12, 2000: State receives lab report with results of analyses of March 30 and
April 28 submissions.


November 1, 2001: Appellee indicted for capital murder.


November 7, 2001: Defense counsel appointed.


December 5, 2001: State submits additional evidence to lab for DNA testing - fingernail
samples, hair, and swabs from victim.


December 14, 2001: Defense files motion for discovery.


January 25, 2002: Court grants discovery motion without fixing a date for discovery to
be accomplished.


April 17, 2002: State receives lab report with results of analysis of December 5
submissions.


July 15, 2002 Trial setting -- case reset for November 4, 2002.


November 4, 2002: Trial setting -- case reset for February 10, 2003.


January 3, 2003: State provides defense with DNA test results from September 12,
2000 lab report after several requests from defense counsel (11
months after discovery order).


January 12, 2003: State designates expert witnesses.


January 31, 2003: Meeting between prosecutors and defense counsel; State turns over
bulk of discovery material, including witness list, autopsy report,
statements by appellee, lab submission reports, and multiple-page
summary prepared by State.


February 13, 2003: State provides defense with copy of lab report from April 17, 2002
(10 months after discovery order).


February 13, 2003: Jury selection begins.


March 3, 2003: Prior to commencement of general voir dire, State discloses that
additional evidence (hair from fingernail scraping) is available for
testing and asks whether defense wants tests performed.


March 5-7, 2003: Suppression hearing.


March 7, 2003: Defense files motion to suppress.


March 12, 2003: Trial court enters findings of fact and conclusions of law, grants
motion to suppress, and orders case to proceed as scheduled.


 After the discovery order was issued, defense counsel made repeated requests of
the State for the DNA evidence. These requests were made either in person or by
telephone until late 2002, at which time the parties began written communication. During
pretrial proceedings on March 5, 2003, defense counsel informed the trial court of his
intent to file a motion to suppress the State's DNA evidence due to the untimely disclosure of the evidence. The trial court took up the issue immediately and heard argument
and testimony from the prosecutor and defense counsel regarding the discovery process.
The court then entered findings that the State's disclosure of the evidence was untimely
and that the State acted willfully in its failure to comply with the discovery order.
Specifically, the court found that "the State's conduct in failing and refusing to provide
the Court-ordered discovery in a fair and timely fashion exceeds negligent conduct, and
was in fact a willful and egregious effort by the State to defeat defendant's constitutional
rights." The court then concluded that because the State acted willfully, the DNA
evidence should be excluded.

 The court of appeals reversed. It first noted that "[e]vidence willfully withheld
from disclosure under a discovery order should be excluded from trial," (1) and defined a
willful act as one that is "done voluntarily and intentionally, with the specific intent to
disobey the law." (2) The court found that "the record does not support a finding of intentional disobedience [by the State] of the trial court's discovery order" and "does not
reflect a willful violation of [that] order." (3) Therefore, the court concluded, the trial court
erred in excluding the evidence. We granted review.

 First, we agree with both the trial court and the court of appeals on the issue of the
timeliness of the State's disclosure of evidence after the discovery order was granted. The
State should have produced the evidence in more timely fashion, especially considering
the repeated requests made by defense counsel. Therefore, we are concerned only with the
court of appeals' review of the trial court's choice of sanctions for the State's noncompliance.

 The trial court's order excluding the evidence was based on its ultimate finding
that the State acted willfully in violating the discovery order. We disagree with this
finding. The facts pertaining to the State's conduct do not demonstrate a willful violation. 

 The trial court seemed particularly concerned with three situations it believed to be
evidence of the willfulness of the State's conduct. First, the court found that on two
separate occasions, the prosecutor, believing that he would no longer be in charge of the
case, failed to respond properly to defense requests for discovery and instead worked on
other matters. According to the trial court, this "election" not to turn over the evidence
and to work on other matters constituted a "willful choice" made by the State. While it is
obvious that the prosecutor consciously chose this course of conduct, his actions were
"willful" only with respect to the conduct itself. In other words, his choice to engage in
conduct that, in effect, would violate the discovery order was voluntary. But we find no
evidence in the record that, by his choice, he intended to violate the order or harm the
defense. At the hearing, the prosecutor explained that he was told in late November 2002
of his assignment to another court and that he should transfer his files to his successor in
the court where this case was pending. He then explained his failure to turn over the
requested evidence to the defense:

 From the time I was told, "You're not in this court anymore," until that
moment, I put this case out of my mind because it was no longer at that
point my responsibility. It doesn't go to the responsibility of the district
attorney's office, but I do think it goes towards the issue of intent or bad
faith in the failure of providing discovery.


The prosecutor may have been extremely negligent or even reckless with respect to the
result of his actions, but we do not believe that this conduct rises to the level of willfulness.

 A second example of conduct to which the trial court's findings referred -- one
which the court said "weigh[ed] heavy on its finding" of the State's "willful and egregious effort  to defeat defendant's constitutional rights" -- involved the timing of a fax
sent by the State to defense counsel. The record shows that "sometime between Christmas
[of 2002] and New Year's," defense counsel spoke with the prosecutor about the need for
discovery. The prosecutor "informed [defense counsel] that this was the first he knew that
the file was still going to be his and he would provide [the defense] with discovery[.]" At
that point, defense counsel told the prosecutor that he would be attending a continuing
legal education (CLE) course during "the first week of January" and that he needed the
evidence "pronto." The State faxed the discovery information to defense counsel on
January 3, 2003, the day defense counsel left for his CLE course. The fact that defense
counsel mentioned his future absence from his office to the prosecutor shows the State's
awareness that he would not receive the fax immediately, and the fax did include a letter
from the prosecutor apologizing for the "confusion." The record, however, gives no
indication that the timing was anything more than negligence on the part of the State. We
do not believe it reasonable to infer that the prosecutor's decision to fax the information
at that particular time (less than a week after learning about the CLE course) was a
strategic and purposeful effort to thwart the defense in its preparation of its case. The trial
court's characterization of the event as "gamesmanship at the expense of defendant's
constitutional rights to a fair trial" is not supported by the record.

 A third example that the trial court cited as contributing to its finding of willfulness was the State's response to the court's ruling at the conclusion of the hearing on
March 7. After both sides finished presenting their arguments, the court indicated that it
was not going to exclude the evidence but was going to declare a mistrial:

COURT: [M]y prior feelings of the conduct not being intentional or willing on behalf
of the State still stands. However, I do find that the conduct of the State was
extremely negligent. I believe that the discovery in this case was not timely
done. I think it was not handled properly. I'm not going to exclude the
evidence. What I am going to do is I'm going to dismiss the jury in this
case, which I do so with regret because we have spent over a month trying
to get this process going.  But we're going to do that out of an abundance
of caution for [the defendant].  Now I'll entertain any thoughts or objections.


DEFENSE: Your Honor, of course, on behalf of the defendant, we do have to object.
We've selected a jury in this cause. We're satisfied with that jury. We
believe that is denies him due process and also his right to a speedy trial ;
and we would prefer to go  forward on March 17 as scheduled.


 ********


COURT: And I'll overrule [that objection]. And, for the purposes of the record, I
want everybody to know I'm making this motion on my own because I've
been placed in a position that I have to do that.  And once again, it is
indeed unfortunate that we have to release this panel and waste our time;
but that's what I'm going to do. Any response from the State?


 ********


STATE: Judge, we have no arguments at this point.


COURT: Are there any objections to the Court's ruling?


STATE: Well, Judge, if you ask me specifically -- I would rather stand moot [sic].
But if the Court wants me --


COURT: No. I want them.


STATE: Yes, sir, Judge. We are ready for trial. We feel like the motion, as I've
argued, to suppress is not adequate. And on top of all that, this defendant
has not asked for a continuance.  So, I assume if he hasn't asked for a
continuance that he's ready to go to trial.  So, in order to protect the
record, I guess, since you have asked me to speak on it, I do object because
there's no continuance.  He's said, "I want to go to trial."  We're ready
to go.  And of course, whatever this learned Court decides, we respect
that tremendously.


COURT: Okay. If that is the position of the State, then I'm going to grant -- I'm
going to agree with you. And what we're going to do is I'm going to adopt
all prior findings in the record. The case will proceed to trial March the
17th. All DNA scientific analysis and testing will be excluded from that
proceeding, and we'll move forward March 17th.


STATE: Can I have one other second, Judge?


 *******


 Judge, of course, this is a little unusual. I've never been in this position
before; so, I think the proper thing for us to do is to ask you to stay this case
for at least a few days to have us the chance to go up on appeal [sic].


COURT: You've got between now and March 17th to do that.


 *******


 And if we're going to take that approach to it, then the Court also wants
additional time to review this file. I want to review the record, and my
findings as to the conduct is subject to change as well.


STATE: Judge, I may be missing something here; but are you insinuating that you're
going to punish the State of Texas because we've asked you to stay this
case because we're going to appeal?


COURT: Oh, no, sir.


 *******


 What I'm telling you is if you need more time, then I certainly would like to
have more time, too. I'm trying to --


STATE: About what conduct, Your Honor, if I may inquire?


COURT: Well, the conduct of the State in discovery, yes, sir.


 The trial court pointed to the State's comments to support its finding of willfulness: "The final comments of the State indicating its desire to exclude any lesser remedy
demonstrates the willfulness of the conduct in withholding the evidence and complete
disregard of the constitutional rights of the defendant in this case." We disagree. The
State's objection to the trial court's ruling, which the court specifically asked to hear, was
in no way relevant to the nature of the State's conduct when it violated discovery order.
While avoiding additional delay may have been advantageous to the State, there is no
evidence that the prosecutor's request to proceed was calculated specifically to deny the
appellee his constitutional right to a speedy trial. This seems especially true given the fact
that, only moments before, the defense also was urging that the trial proceed. 

 The record demonstrates that the State made what the prosecutor himself described
as "grievous error[s] and mistake[s]," but there is no evidence that the prosecutor in this
case acted with the specific purpose of disobeying the court's discovery order, preventing
the defense from preparing its case, or denying the defendant his constitutional rights to a
speedy trial or effective assistance of counsel.

 The trial court erred by finding that the State acted willfully in its noncompliance
with the discovery order and by excluding the DNA evidence. The court of appeals'
holding on this issue is correct. The court of appeals also concluded that "[u]nder the
circumstances in this case, the appropriate solution to the discovery dispute was a
continuance of the trial." (4) Because the trial court's ultimate findings characterized the
State's conduct as willful, and as neither party presents argument regarding what remedies are available when the State's conduct is of a less culpable nature, we express no
opinion as to what alternative sanction the trial court should have imposed.

 The court of appeals' judgment is affirmed.


En banc.

Delivered November 10, 2004.

Publish.
1. State v. LaRue, 108 S.W.3d 431, 434 (Tex. App. -- Beaumont 2003) (citing Jackson v.
State, 17 S.W.3d 664 (Tex. Cr. App. 2000); Hollowell v. State, 571 S.W.2d 179 (Tex. Cr. App.
1978)).
2. Ibid. (quoting Black's Law Dictionary 1599 (6th ed. 1990)).
3. Id., at 437.
4. Id., at 435.