In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00441-CR
_____

**JOE EDWARD LARUE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause No. 85250-A**

**MEMORANDUM OPINION**

Joe Edward LaRue (LaRue) was convicted of the capital murder of Donna
Pentecost and he was sentenced to life imprisonment. LaRue filed a Motion for
Forensic DNA Testing (hereinafter "post-conviction motion"). *See* Tex. Code
Crim. Proc. Ann. art. 64.01 (West Supp. 2014). LaRue appeals the trial court's
denial of his post-conviction motion. *See id.* art. 64.05 (West 2006). We affirm.

1

This Court previously issued two opinions in two appeals pertaining to LaRue's underlying trial and conviction. *See State v. LaRue*, 108 S.W.3d 431, 433-34 (Tex. App.—Beaumont 2003), *aff'd*, 152 S.W.3d 95 (Tex. Crim. App. 2004) (hereinafter *LaRue I*) (reversing the trial court's grant of LaRue's motion to suppress certain DNA evidence); *LaRue v. State*, No. 09-05-145-CR, 2007 Tex. App. LEXIS 4072 (Tex. App.—Beaumont May 23, 2007, pet. ref'd) (not designated for publication) (hereinafter *LaRue II*) (affirming LaRue's conviction). The facts in the underlying trial were detailed in *LaRue II*. We briefly outline the facts as necessary to the issue now before us in this appeal.

Donna Pentecost (Pentecost) was found murdered on or about October 15, 1989. *LaRue II*, 2007 Tex. App. LEXIS 4072, at *1. Her naked body was lying on the ground in the backyard of the residence where she lived. *Id.* at *3. Pentecost had an injury to her skull. *Id.* It appeared her body had been moved slightly from the actual place where the damage to the head occurred. *Id.* There was also bruising up and down her back, on her left calf, and on her shoulder blades. *Id.*

Initially, LaRue was one of six suspects in Pentecost's murder. *Id.* at *5. LaRue, Pentecost, and a couple of the other suspects worked at the same company. *Id.* at **1, 4-5, 11, 14. In 1989, DNA testing was unsuccessful in determining

2

Pentecost's killer. *Id.* at *1. As a result of significant advancements in DNA testing after the time of the murder, evidence taken from the victim's mouth was retested in 2000, and the Texas Department of Public Safety crime lab report identified the material as LaRue's semen. *Id.* LaRue was indicted for the murder of Pentecost. *Id.* at **1-2.

In March and April of 2000, the State submitted certain evidence for DNA testing and analysis, including oral swabs, oral slides, DNA extracts and blood cards from Pentecost, a blood vial and bloodstain from LaRue, a shirt from Pentecost's body, and a cigarette butt found at the scene. *LaRue I*, 108 S.W.3d at 433. The State received the results from these submissions in September of 2000. *Id.* at 433-34. In December of 2001, the State submitted additional items for DNA testing and analysis, including fingernail samples, hair, and swabs. *Id.* at 434. The State provided the results from these tests to the defense in February of 2003. *Id.*

According to the test results, Pentecost and LaRue were excluded from the contributors of the stain found on the cigarette butt. *LaRue II*, 2007 Tex. App. LEXIS 4072, at *8. However, LaRue could not be excluded as the contributor of two stains from Pentecost's right hand fingernail samples. *Id.* at **8-9. Additionally, two fingerprints were lifted from the door of the victim's residence, but neither matched any prints of any of the suspects. *Id.* at *9.

During jury selection in 2003, after completion of the voir dire but before the jury was seated, the prosecutor announced that a hair under a fingernail scraping was also available for testing and the State asked whether defense counsel wanted testing done. *LaRue I*, 108 S.W.3d at 434. The defense filed a motion to suppress the results from the additional DNA testing, and after a hearing, the trial court concluded that the State's disclosure was untimely and that, because the State acted willfully, the DNA evidence should be excluded. *Id.* The State filed an interlocutory appeal of the trial court's suppression order. *Id.* at 433. In *LaRue I*, this Court concluded that the trial court erred in granting the suppression of the evidence. We reversed and remanded the case to the trial court. *Id.* at 437. The Court of Criminal Appeals affirmed this Court's judgment. *See State v. LaRue*, 152 S.W.3d at 100.

LaRue's case was reset for trial in March of 2005. *LaRue II*, 2007 Tex. App. LEXIS 4072, at *2. LaRue waived his right to a jury trial in exchange for the State's waiver of the death penalty. *See id.* at *2. At his trial, LaRue testified that he was with Pentecost at her home on the night she was killed, and that he had consensual sex with Pentecost that night but that when he left her she was alive. *Id.* at **1, 14-15. At trial, the State presented expert testimony regarding the testing of the biological material, which included the following:

. . . the DPS crime lab reports concluded LaRue was the source of the semen on an oral swab from the victim. Pentecost and LaRue were excluded from the contributors of the stain on the cigarette butt. LaRue could not be excluded as the contributor of two stains from Pentecost's fingernail samples. Two fingerprints were lifted from the door of the victim's residence, but neither matched any prints of the suspects.

*Id.* at **8-9. A defense expert on forensic DNA testified regarding the fingernail samples that "[f]inding DNA samples under someone's fingernails would . . . not necessarily indicate whether it was deposited by a consensual or a non-consensual act." *Id.* at **19-20.

The trial court found LaRue guilty in April of 2005, and the court sentenced LaRue to life imprisonment. *See id.* at *1. LaRue appealed his conviction, and this Court affirmed. *See generally LaRue II*, 2007 Tex. App. LEXIS 4072. In our Memorandum Opinion we stated:

The DNA testing showed LaRue's semen in Pentecost's mouth. [A witness] overheard LaRue tell another inmate that LaRue had sex with the victim and hit her in the head with a brick. The evidence shows that not until at least eight months after Pentecost's murder did LaRue include in any statements to law enforcement that he was with Pentecost the night she was murdered.
    . . . Based on the circumstantial evidence presented at trial, the trial court could have rationally concluded LaRue intentionally caused Pentecost's death.

*Id.* at ** 26-28. We concluded that the evidence was legally and factually sufficient to support the trial court's finding that LaRue intentionally killed Pentecost. *Id.*

5

In June of 2014, LaRue filed a "Motion for Forensic DNA Testing Pursuant to Art. 64.01 of the Texas Code of Criminal Procedure" (post-conviction motion) with the trial court, requesting further "re-testing" of the oral swabs from Pentecost, the hair found on Pentecost's hand, a cigarette butt, a bloody fingerprint found on a door, the fingernail scrapings taken from Pentecost, and "blood samples from a t-shirt worn by a potential suspect – Augustine[.]" *See* Tex. Code Crim. Proc. Ann. art. 64.01. In particular, in his post-conviction motion he argued that identification of the perpetrator was an issue at trial, and "there were clearly other contributors [of DNA material] – one of whom could likely be the actual perpretrator [sic]."

Both LaRue's post-conviction motion and the State's response thereto alleged that all of the items mentioned in LaRue's post-conviction motion were previously tested. LaRue alleged in his post-conviction motion that the testing that was previously done was "confusing[]" and produced "varying results." In his brief on appeal, LaRue challenges the "integrity of his blood sample" that was used for the DNA comparison on the swabs and stains. LaRue admits that he had oral sex with the victim before her death but he contends he established at trial by virtue of

6

an affidavit from Ron Singer[1] that there were "problems and inconsistencies with both the reports . . . which raised the possibility that defendant might not be the donor." LaRue claims that "Singer pointed out a possible error in labeling the male and female portions of the oral swab, as well as possible errors in interpretation. Those results could easily be the result of a contaminated sample." LaRue contends that a new blood sample taken from LaRue could then be compared to the oral swabs and that "there is a reasonable likelihood that new testing will produce more accurate results." As to the fingernail clippings, LaRue argues on appeal that the DNA was a mixture of his DNA with the victim's DNA and there could have been another contributor, or there is a possibility due to an issue as to the integrity of appellant's sample, that he might be excluded. With respect to the shirt taken from Augustine, another suspect, LaRue argues that Augustine was

> [o]ne of the suspects initially identified by police . . . a known drug dealer, who had provided drugs to the victim. . . . Police Chief Marsh talked with Augustine on August 18, and noticed blood on his shirt. . . . The shirt was taken as evidence, and submitted to the local lab, and later to the Texas Department of Public Safety. Initial testing indicated blood was on the shirt, but no results were ever obtained . . . While blood samples were taken from several suspects, no samples were taken from Augustine, and therefore no comparison could be made with him.

---

[1] LaRue states in his appellate brief that Singer is currently the director of the crime lab at the office of the Tarrant County Medical Examiner.

The State maintains that LaRue is not entitled to further DNA testing, that LaRue did not deny the existence of his DNA regarding various exhibits at trial, and that further DNA testing would not have prevented LaRue's prosecution or have negated his guilt. The State argued in response to the post-conviction motion that LaRue "does not contest the DNA results . . . admitted at trial. He merely 'suggests' that exculpatory results may point to other contributors."[2]

LaRue argues on appeal that the trial court erred in denying his post-conviction motion for DNA testing because "new tests [are] reasonably likely to produce more accurate results, and there [is] at least a 51% chance that appellant would not have been convicted if exculpatory results had been available during trial." In his brief, he challenges the "integrity of his blood sample[]" that was used in previous testing, and he argues that there is a reasonable likelihood that new testing would produce more accurate results. He admits his DNA profile was found on the fingernail scrapings from the victim, but he argues that "[i]f another contributor could be identified, that would place someone else at the scene." As to the t-shirt allegedly belonging to another suspect that LaRue identifies as

---

[2] The State alleges that when LaRue withdrew his election to have a jury assess punishment, he entered into certain stipulations concerning several of the exhibits that contained the DNA evidence.

8

"Augustine," LaRue asserts that, if the victim's blood were found on the shirt, it would also place Augustine at the scene.

STANDARD OF REVIEW

Generally, we review a trial court's decision on a motion for DNA testing under a bifurcated standard of review. *Whitaker v. State*, 160 S.W.3d 5, 8 (Tex. Crim. App. 2004). We afford almost total deference to the trial court's determination of issues of historical fact and issues of application of law to fact that turn on credibility and demeanor of witnesses. *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). We review de novo other issues of application-of-law-to-fact questions that do not turn on the credibility and demeanor of witnesses. *Id.* In this case, the trial court did not conduct a live hearing; therefore, we review the trial court's denial of DNA testing de novo. *See Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005).

POST-CONVICTION DNA TESTING

There is no "free-standing due-process right to DNA testing[.]" *Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011). Chapter 64 allows a convicted person to file, in the convicting court, a motion for post-conviction DNA testing of biological evidence. *Whitfield v. State*, 430 S.W.3d 405, 407 (Tex. Crim. App. 2014); *see* Tex. Code Crim. Proc. Ann. art. 64.01(a). "If the motion meets

9

specific requirements and the court grants the motion, article 64.04 requires that 'the convicting court shall hold a hearing and make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted.'" *Whitfield*, 430 S.W.3d at 407 (quoting Tex. Code Crim. Proc. Ann. art. 64.04 (West Supp. 2014)).

A convicting court may order forensic DNA testing only if the statutory preconditions of Chapter 64 are met. *See Holberg v. State*, 425 S.W.3d 282, 284 (Tex. Crim. App. 2014); *Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002). Article 64 contains multiple threshold requirements that must be met before an applicant is entitled to such testing. *See, e.g.*, Tex. Code Crim. Proc. Ann. arts. 64.01 (motion), 64.03 (West Supp. 2014) (requirements; testing). The convicted person bears the burden of satisfying all Chapter 64 requirements. *See Wilson v. State*, 185 S.W.3d 481, 484 (Tex. Crim. App. 2006). A motion for post-conviction DNA testing may request testing of evidence "containing biological material." Tex. Code Crim. Proc. Ann. art. 64.01(a-1). As a threshold matter, therefore, the convicted person is required to show the evidence sought to be tested contains biological material. *Swearingen v. State*, 303 S.W.3d 728, 732 (Tex. Crim. App. 2010). Chapter 64 governs motions for forensic DNA testing and therein it defines "biological material" in relevant part as:

> . . . an item that is in possession of the state and that contains blood, semen, hair, saliva, skin tissue or cells, fingernail scrapings, bone, bodily fluids, or other identifiable biological evidence that may be suitable for forensic DNA testing[.]

Tex. Code Crim. Proc. Ann. art. 64.01(a)(1). On the motion of a convicted person, a trial court may order forensic DNA testing of the biological material only if (1) the court finds: the evidence still exists and is in a condition making DNA testing possible, and the evidence has been subjected to a sufficient chain of custody to establish that it has not been substituted, tampered with, replaced, or altered in any material respect; and (2) the court finds that identity was or is an issue in the case; and (3) the convicted person establishes by a preponderance of the evidence that: he or she would not have been convicted if exculpatory results had been obtained through DNA testing, and the request for testing is not made to unreasonably delay the execution of sentence or administration of justice. *Id.* art. 64.03(a).

The motion may request DNA testing only of evidence that either was not previously subjected to DNA testing or, although previously subjected to DNA testing, can be subjected to testing with newer testing techniques that would yield more accurate and probative results. *See id.* art. 64.01(b). For material that has previously been DNA-tested, the movant must do more than assert that new testing techniques would yield more accurate results; he must also show a reasonable

11

likelihood that the results of new DNA testing would be more probative. *See Routier v. State*, 273 S.W.3d 241, 250 (Tex. Crim. App. 2008).

The statute expressly requires a convicted defendant to show "by a preponderance of the evidence that . . . the person would not have been convicted if exculpatory results had been obtained through DNA testing[.]" *See* Tex. Code. Crim. Proc. Ann. art. 64.03(a)(2)(A). The Court of Criminal Appeals has interpreted the phrase "the person would not have been convicted if exculpatory results had been obtained through DNA testing" to mean a "greater than a 50% chance that he would not have been convicted if DNA testing provided exculpatory results. . . ." *Leal v. State*, 303 S.W.3d 292, 297 (Tex. Crim. App. 2009); *see also Holberg,* 425 S.W.3d at 286-87. "A 'favorable' DNA test result must be the sort of evidence that would affirmatively cast doubt upon the validity of the inmate's conviction; otherwise, DNA testing would simply 'muddy the waters.'" *Gutierrez*, 337 S.W.3d at 892 (quoting *Rivera*, 89 S.W.3d at 59). If the favorable or exculpatory test result would not change the probability that the inmate would still have been convicted, then there is no justification to order any testing. *Id*. The presence of another person's DNA at a crime scene, by itself, is not necessarily exculpatory. *See, e.g.*, *Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App.

12

2008) (evidence of another person's DNA present at the scene in addition to appellant's was not exculpatory in light of other inculpatory evidence at trial).[3]

ANALYSIS

The State does not dispute LaRue's allegation that the identity of the killer was an issue, or that some evidence capable of biological testing still exists, or that such evidence has been subjected to the chain of custody requirements in Article 64.03(2). The State does not contend that LaRue's request for DNA testing is made to unreasonably delay the execution of his sentence or the administration of justice. Rather, the State argues that LaRue failed to establish by a preponderance of the evidence that he would not have been convicted if the request for DNA testing had produced exculpatory results.

To satisfy his burden under article 64.03(a)(2), LaRue is required to show how the results of the requested DNA testing would affect his conviction – that he would not have been convicted if the additional testing produced exculpatory results. *See Wilson*, 185 S.W.3d at 484. While the presence of LaRue's DNA on any material subjected to testing could indicate guilt, the absence of such DNA

_____

[3] Article 64.01(a-1) also requires that the motion be accompanied by an affidavit "containing statements of fact in support of the motion." *See* Tex. Code Crim. Proc. Ann. art. 64.01(a-1). The article "does not specify what facts" must be included in the affidavit. *Smith*, 165 S.W.3d at 362.

13

would not necessarily establish by a preponderance of the evidence that he would not have been convicted. *See Holberg*, 425 S.W.3d at 287-88 (exculpatory evidence does not necessarily negate other inculpatory evidence); *Swearingen*, 303 S.W.3d at 736 ("[A] movant does not satisfy his burden under Article 64.03 if the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing."); *Rivera*, 89 S.W.3d at 60 (presence of the victim's DNA under defendant's fingernails could indicate guilt, but the absence of such DNA would not indicate innocence). Similarly, even if new DNA testing shows that another person may have been present at the crime scene, that finding would not exonerate the defendant because "it would show nothing more than there was another party to the crime, at best." *Wilson*, 185 S.W.3d at 485; *see also Prible*, 245 S.W.3d at 470 ("[E]ven if the evidence was retested and determined to contain another person's DNA in addition to Appellant's DNA, it would not establish by preponderance of the evidence that Appellant would not have been convicted if the jury had heard that DNA from a third-party was present."); *Hood v. State*, 158 S.W.3d 480, 483 (Tex. Crim. App. 2005) (holding that, given other inculpatory evidence at trial, "[e]ven if DNA tests revealed the blood of another individual at the crime scene . . . that evidence would at most establish that [defendant] acted with someone else in committing the crime").

Previous Blood Testing

In his motion for post-conviction DNA testing, LaRue argued that in 1990, when testing blood samples taken from him, one crime lab determined his blood was type A and another crime lab determined his blood was type O. Although LaRue generally referenced crime lab reports in his post-conviction motion, he did not attach copies of such reports and he did not cite to an exhibit or other portion of the trial record. LaRue argued in his post-conviction motion that such "varying results . . . should be sufficient to raise concerns about the reliability and validity of the results."

Because LaRue's blood was previously tested, he must establish that "newer testing techniques [would] provide a reasonable likelihood of results that are more accurate *and probative* than the results of the previous test." Tex. Code Crim. Proc. Ann. art. 64.01(b)(2) (emphasis added). LaRue contends in his brief on appeal that if another blood sample is taken from LaRue and then it is compared to the swabs, stains, and presumably the nail clippings that "there is a possibility that subsequent testing would exclude appellant." LaRue admitted at trial and later in his brief on appeal that he had consensual sex with the victim on the evening of her death. *LaRue II*, 2007 Tex. App. LEXIS 4072, at **14-15. Therefore, even if he is correct in his argument that there is a possibility that further testing would exclude LaRue

15

from matching the swabs and semen taken from Pentecost, he has failed to explain how such results would affect his conviction in light of other inculpatory evidence; additionally, even assuming new tests of LaRue's blood would be more accurate, LaRue has not established that new results would be more probative than the evidence the trial court considered.

Fingernail Scrapings

LaRue's post-conviction motion made no specific argument concerning retesting the fingernail scrapings. In his brief on appeal, he generally argues that although "defendant's profile was found on the fingernail scrapings, the results established a mixture. If another contributor could be identified, that would place someone else at the scene." LaRue fails to cite to a particular test result or to any part of the trial record in support of this argument.

In reviewing LaRue's appeal of his conviction, we stated in our opinion in *LaRue II* that "LaRue could not be excluded as the contributor of two stains from Pentecost's fingernail samples." *Id.* at **8-9. We also noted that a DNA expert for the defense had testified that DNA material under someone's fingernails would not necessarily indicate whether it was deposited as a result of consensual or nonconsensual conduct. *Id.* at **19-20. LaRue himself testified he had consensual sex with Pentecost that night, and further that Augustine was at Pentecost's house

16

the night she was murdered. Accordingly, LaRue put himself at the scene of the murder and further by LaRue's own testimony, no exculpatory DNA results would be necessary in order to "place someone else at the scene." *Id.* at \*15. Therefore, even if retesting fingernail scrapings were to establish a mixture of LaRue's and someone else's DNA, there is no indication such would be more probative than the evidence the trial court considered.

Augustine's T-shirt

In his brief on appeal, LaRue argues that "[i]nitial testing indicated blood was on the shirt, but no results were ever obtained." He further suggests that "if the blood on Augustine's shirt belonged to the victim that would be exculpatory[,]" and it would place Augustine at the scene of the crime. In reviewing LaRue's appeal of his conviction in *LaRue II*, we noted that "[w]hile a shirt of Augustine's tested positive for human blood several days after the murder, the blood could not be typed." *Id.* at \*18.

As we have already explained, LaRue himself testified that Augustine told LaRue that Augustine was going to Pentecost's house on the night of the murder. LaRue also gave an "In Custody Statement" to the police, which was admitted into evidence at trial, wherein he stated that Augustine was at Pentecost's house on the night of the murder, that Augustine hit her during an argument, and that another

17

person with Augustine grabbed a brick and struck Pentecost. *Id.* at **17-19. Therefore, even if the blood found on Augustine's shirt could now be typed or matched to Pentecost, such results would not be more probative than the evidence that was already before the trial court.

On the record before us, we conclude that, even if the evidence in question were retested and yielded results that were consistent with LaRue's allegations, it would only show that an additional person was at the scene or, at most, may have been involved in the crime, and LaRue did not meet his burden of establishing, by a preponderance of the evidence, that he would not have been convicted of Pentecost's murder. *Wilson*, 185 S.W.3d at 486; *see also Prible*, 245 S.W.3d at 470. The trial court did not err by denying LaRue's motion for post-conviction forensic DNA testing. *See* Tex. Code Crim. Proc. Ann. arts. 64.01(a), (a-1), (b), 64.03(a). We affirm the trial court's order denying LaRue's motion.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on March 19, 2015
Opinion Delivered October 28, 2015
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.

18